**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Maryellen Durgin

    v.                            Case No. 16-cv-451-SM

Nancy A. Berryhill, Acting
Commissioner, Social
Security Administration

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Maryellen Durgin moves to reverse the Acting Commissioner's decision to deny her applications for: (1) Social Security disability insurance benefits, or DIB, under Title II of the Social Security Act, see 42 U.S.C. § 423; (2) widow's insurance benefits, also under Title II, see 42 U.S.C. § 402; and (3) supplemental security income, or SSI, under Title XVI, see 42 U.S.C. § 1382.  The Acting Commissioner, in turn, moves for an order affirming her decision.  For the reasons that follow, this matter should be remanded to the Acting Commissioner for further proceedings.

## I.  Standard of Review

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon
> the pleadings and transcript of the record, a judgment
> affirming, modifying, or reversing the decision of the
> Commissioner of Social Security, with or without
> remanding the cause for a rehearing.  The findings of
> the Commissioner of Social Security as to any fact, if
> supported by substantial evidence, shall be conclusive
> . . . .

42 U.S.C. § 405(g) (setting out the standard of review for Title

II decisions); see also 42 U.S.C. § 1383(c)(3) (establishing §

405(g) as the standard of review for Title XVI decisions).

However, the court "must uphold a denial of social security . .

. benefits unless 'the [Acting Commissioner] has committed a

legal or factual error in evaluating a particular claim.'"

Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996)

(per curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885

(1989)).

As for the statutory requirement that the Acting

Commissioner's findings of fact be supported by substantial

evidence, "[t]he substantial evidence test applies not only to

findings of basic evidentiary facts, but also to inferences and

conclusions drawn from such facts." Alexandrou v. Sullivan, 764

F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner,

360 F.2d 727, 730 (2d Cir. 1966)).  In turn, "[s]ubstantial

evidence is 'more than [a] mere scintilla.  It means such

relevant evidence as a reasonable mind might accept as adequate

to support a conclusion.'" Currier v. Sec'y of HEW, 612 F.2d

594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402
U.S. 389, 401 (1971)).  But, "[i]t is the responsibility of the
[Acting Commissioner] to determine issues of credibility and to
draw inferences from the record evidence.  Indeed, the
resolution of conflicts in the evidence is for the [Acting
Commissioner], not the courts."  Irlanda Ortiz v. Sec'y of HHS,
955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (citations
omitted).  Moreover, the court "must uphold the [Acting
Commissioner's] conclusion, even if the record arguably could
justify a different conclusion, so long as it is supported by
substantial evidence."  Tsarelka v. Sec'y of HHS, 842 F.2d 529,
535 (1st Cir. 1988) (per curiam).  Finally, when determining
whether a decision of the Acting Commissioner is supported by
substantial evidence, the court must "review[] the evidence in
the record as a whole."  Irlanda Ortiz, 955 F.2d at 769 (quoting
Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).


## II.  **Background**

The parties have submitted a Joint Statement of Material
Facts.  That statement, document no. 13, is part of the court's
record and will be summarized here, rather than repeated in
full.

Durgin last worked in September of 2013, when she was

discharged from her position as a receptionist.  At the hearing on her claims, before an Administrative Law Judge ("ALJ"), Durgin testified that she was discharged because her employer "felt that [she] was making too many mistakes."  Administrative Transcript (hereinafter "Tr.") 65.  She made that same point, more expansively, in her Disability Report, in which she gave the following explanation for why she stopped working: "I was [t]erminated from my position.  A lot of mental health issues going on.  Making mistakes at work . . . ."  Tr. 270.  After Durgin was discharged, she applied for DIB and SSI.  While her applications were pending, Durgin's husband died.  Shortly thereafter, she filed an additional application, for disabled widow's benefits.

Durgin has been diagnosed with both physical and mental impairments.  Because her claims of error focus exclusively on the manner in which the ALJ evaluated her mental impairments, there is no need to discuss her physical impairments in any detail.  As for mental impairments, Durgin has been diagnosed with depression,[1] panic disorder,[2] attention-deficit

---

[1] Specific diagnoses include: depressive disorder, NOS; major depressive disorder, single episode with anxious distress and bereavement; major depressive disorder (recurrent, moderate); and persistent depressive disorder.

[2] Specific diagnoses include: panic disorder and panic disorder with some agoraphobia.

hyperactivity disorder ("ADHD"), and generalized anxiety disorder.  Treatment for her mental impairments has included both medication and therapy.

After Durgin applied for DIB and SSI, she was sent to Dr. Sandra Vallery for a consultative examination.[3]  Dr. Vallery examined Durgin and reported her findings in a Comprehensive Psychological Profile.  Based upon diagnoses of depressive disorder, panic disorder with some agoraphobia, and ADHD, Dr. Vallery gave the following opinions on Durgin's then-current level of functioning:

> Activities of Daily Living:  This claimant is able to complete some activities during the day such as grooming and hygiene, some domestic chores, meal preparation, and taking care of personal affairs.  She is also running errands.

> Social Functioning:  This claimant is able to interact appropriately and communicate effectively with family members and friends.

> Understanding and Remembering Instructions:  This claimant is able to understand instructions.  Memory was fair in the clinical interview.  She can remember short and simple instructions, but not lengthy and detailed ones at this time given her level of depression and situational stressors.

> Concentration and Task Completion:  This claimant was able to maintain her attention in this evaluation. She is able to concentrate and persist at task.  She is able to pace herself and compete task[s].

---

[3] "A consultative examination is a physical or mental examination or test purchased for [a claimant] at [the Social Security Administration's] request.  20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1).

Reaction to Stress, Adaptation to Work or Work-like
Situations:  Given this claimant's situational
stressors and her high level of depression, she is not
able to tolerate stressors common to a work
environment.  However, she can make simple decisions,
maintain attendance, and interact appropriately with
supervisors.

Tr. 447.

Next, Dr. Craig Stenslie, a non-examining state-agency

consultant, performed a Psychiatric Review Technique ("PRT")[4]

assessment in which he found that Durgin had: (1) mild

restrictions on her activities of daily living; (2) mild

difficulties in maintaining social functioning; (3) moderate

difficulties in maintaining concentration, persistence or pace;

and (4) suffered one or two repeated episodes of decompensation,

each of extended duration.[5]  Based upon those findings, Dr.

Stenslie determined that Durgin had two severe mental

impairments, an anxiety disorder and an affective disorder.  Dr.

Stenslie also assessed Durgin's mental residual functional

---

[4] The Social Security Administration ("SSA") uses the PRT to
evaluate the severity of mental impairments.  See 20 C.F.R. §§
404.1520a & 416.920a (describing the PRT).

[5] According to the applicable regulations, the SSA will generally
find that a claimant's impairment is not severe "[i]f [it]
rate[s] the degree of [the claimant's] limitation in the first
three functional areas as 'none' or 'mild' and 'none' in the
fourth area."  20 C.F.R. §§ 404.1520a(d)(1) & 416.920a(d)(1).

capacity ("RFC").[6]  He found that she had no limitations in the
areas of: (1) understanding and memory; (2) sustained
concentration and persistence; and (3) social interaction.
Within the realm of adaptation, Dr. Stenslie found that Durgin
had no significant limitations in three areas, but was
moderately limited in the area of responding appropriately to
changes in the work setting.

After describing Durgin's mental RFC, Dr. Stenslie offered
the following additional explanation:

> There is no mental health treatment or complaint in
> [the] notes.  A [consultative examination] from Dr. S.
> Vallery indicates some panic attacks and depression.
> [Dr. Vallery] opines [that Durgin is] not able to
> handle stress; however, the [medical evidence of
> record] would suggest that while she has limited
> stress tolerance, she does not have a complete
> inability to deal with stress – Dr. Vallery's
> statement in this regard is rebutted as not supported
> by the data and her other statements are accepted as
> is.
>
> . . . .  She is able to deal adequately with all
> instructions, maintain attention for extended periods,
> sustain an ordinary routine without special
> supervision, complete a normal work day and week, and
> work in coordination with others.  She is able to deal
> adequately with change in a low stress situation.

Tr. 107.  Finally, Dr. Stenslie gave the following explanation
for ascribing limitations to Durgin that were less restrictive

---

[6] "Residual functional capacity" is a term of art that means "the
most [a claimant] can still do despite [her] limitations."  20
C.F.R. §§ 404.1519 & 416.919.

than those ascribed by Dr. Vallery:

> The opinion contrasts sharply with the other evidence
> in the record, which renders it less persuasive.  Dr.
> Vallery's statement that claimant is not able to
> handle stress, is rebutted as not supported by the
> data and her other statements are accepted as is.  The
> opinion is without substantial support from other
> evidence of record, which renders it less persuasive.

Tr. 108.

In addition to the opinions provided by Drs. Vallery and
Stenslie, the record includes two other opinions on Durgin's
mental RFC that were authored during the summer of 2015.  For
reasons that will become apparent below, the court will focus on
the sections of those opinions that report evaluations of
Durgin's capacity to perform semiskilled work.

Jonathan Hickman, a nurse practitioner at Seacoast Mental
Health Center ("Seacoast") who had seen Durgin three or four
times, completed a Mental Impairment Questionnaire that was
cosigned by a supervising physician, Dr. James Kates.  With
respect to the mental abilities necessary to do semiskilled and
skilled work, nurse Hickman and Dr. Kates opined that Durgin was
limited, but could perform satisfactorily in two areas: (1)
setting realistic goals or making plans independently of others;
and (2) dealing with the stress of semiskilled and skilled work.
They opined that she was seriously limited but not precluded in
two other areas: (1) understanding and remembering detailed

instructions; and (2) carrying out detailed instructions.[7]  Nurse Hickman and Dr. Kates offered the following narrative explanation for their opinions: "Disrupted concentration related to anxiety [and] depression."  Tr. 734.

Debra Arena, a social worker at Seacoast who had provided Durgin with psychotherapy on a weekly basis for approximately five months, also completed a Mental Impairment Questionnaire on Durgin.  With respect to the mental abilities necessary to do semiskilled and skilled work, Arena opined that Durgin was unable to meet competitive standards in one area, setting realistic goals or making plans independently of others, and had no useful ability to function in three areas: (1) understanding and remembering detailed instructions; (2) carrying out detailed instructions; and (3) dealing with the stress of semiskilled and skilled work.  Arena offered the following narrative explanation for her opinions: "Significantly severe difficulty concentrating."  Tr. 741.

After Durgin's claims were initially denied, she received a hearing before an ALJ.  After the hearing, the ALJ issued a decision that includes the following relevant findings of fact and conclusions of law:

---

[7] The form contains check-boxes for two even more restrictive assessments, "[u]nable to meet competitive standards," Tr. 734, and "[n]o useful ability to function," id.

5.  The clamant has the following severe impairments:
obesity, right knee degenerative joint disease and
osteoarthritis; and type II diabetes mellitus.  (20
CFR 404.1520(c) and 416.920(c).

. . . .

6.  The claimant does not have an impairment or
combination of impairments that meets or medically
equals the severity of one of the listed impairments
in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR
404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925
and 416.926).

. . . .

7.  After careful consideration of the entire record,
I find that the claimant has the residual functional
capacity to perform sedentary work as defined in 20
CFR 404.1567(a) and 416.967(a) except: the claimant
cannot climb ladders, ropes, or scaffolds; the
claimant cannot crawl, but can occasionally bend,
kneel, stoop, squat, or crouch; the claimant can
occasionally operate foot controls; the claimant must
avoid extremes of cold, heat, wetness, or humidity;
the claimant must avoid excessive vibrations, moving
machinery, and unprotected heights; the claimant is
limited to low stress work, defined as work involving
only occasional decisionmaking and only occasional
changes in work setting.

. . . .

8.  The claimant is capable of performing past
relevant work as a receptionist (DOT # 237.367-038;
sedentary in exertion, SVP 4).  This work does not
require the performance of work-related activities
precluded by the claimant's residual functional
capacity (20 CFR 404.1565 and 416.965).

Tr. 44, 45, 46, 50.

At Durgin's hearing, the ALJ heard testimony from a

vocational expert ("VE"), who characterized Durgin's

receptionist job as semiskilled work.  In response to a
hypothetical question from the ALJ, the VE testified that a
person with the RFC recited above would be able to perform
Durgin's previous job as a receptionist.  Then, presumably in
reference to Dr. Vallery's opinion that Durgin was incapable of
remembering lengthy and detailed instructions, the ALJ asked the
VE whether the addition of a limitation to simple, unskilled
work to the foregoing hypothetical would eliminate all past
relevant work, and the VE testified that it would.

### III. <u>Discussion</u>

**A.**    <u>**The Legal Framework**</u>

To be eligible for disability insurance benefits under
Title II, a person must: (1) be insured for such benefits; (2)
not have reached retirement age; (3) have filed an application;
and (4) be under a disability.  42 U.S.C. §§ 423(a)(1)(A)-(D).
To be eligible for supplemental security income under Title XVI,
a person must be aged, blind, or disabled, and must meet certain
requirements pertaining to income and assets.  42 U.S.C. §
1382(a).  The question in this case is whether the ALJ correctly
determined that Durgin was not under a disability from September
20, 2013, through August 21, 2015.

To decide whether a claimant is disabled for the purpose of determining eligibility for either Title II or Title XVI benefits, an ALJ is required to employ a five-step process. <u>See</u> 20 C.F.R. §§ 404.1520 (Title II) & 416.920 (Title XVI).

> The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

<u>Seavey v. Barnhart</u>, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920).

The claimant bears the burden of proving that she is disabled. <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 (1987). She must do so by a preponderance of the evidence. <u>See</u> <u>Mandziej v. Chater</u>, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing <u>Paone v. Schweiker</u>, 530 F. Supp. 808, 810-11 (D. Mass. 1982)). Finally,

> [i]n assessing a disability claim, the [Acting Commissioner] considers objective and subjective factors, including: (1) objective medical facts; (2) [claimant]'s subjective claims of pain and disability as supported by the testimony of the [claimant] or other witness; and (3) the [claimant]'s educational background, age, and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797
F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690
F.2d 5, 6 (1st Cir. 1982)).

**B.    Durgin's Claims**

Durgin claims that the ALJ failed to properly evaluate her
mental impairments by: (1) ignoring her diagnosis of ADHD; (2)
determining that her depression and anxiety were not severe
impairments; and (3) failing to include any limitations in her
RFC arising from her mental impairments.[8]  The court agrees with
Durgin that the manner in which the ALJ handled her mental
impairments merits a remand.

As Durgin points out in her motion to reverse, her claim
turns on one question: does substantial evidence support the
ALJ's determination that she had the mental RFC to perform
semiskilled work.  In Dr. Vallery's opinion, Durgin was limited
to unskilled work.  The ALJ had this to say about Dr. Vallery's
opinion:

> I afford some weight to the opinion of consultative
> examining physician Sandra Vallery, Ph.D.  On March 4,
> 2014, Dr. Vallery opined that the claimant retained
> the ability to interact appropriately with

---

[8] Durgin sums up her argument this way: "In reaching [his]
conclusions, the ALJ relied on a medical expert [Dr. Stenslie]
who did not review the bulk of the evidence [i.e., the RFC
assessments that post-dated his RFC assessment], then dismissed
other opinion evidence [i.e., Dr. Vallery's opinion],
effectively substituting his own judgment for medical opinion."
Cl.'s Mem. of Law (doc. no. 9-1) 4.

> supervisors, concentrate, persist, and complete tasks,
> and remained able to understand instructions.  I
> afford this portion of her assessment great weight.
> However, Dr. Vallery further opined that the claimant
> could not remember lengthy or detailed instructions
> and could not tolerate stressors common to a work
> environment.  (Exhibit 6F, p. 4)  I afford no weight
> to this portion of Dr. Vallery's assessment, as it is
> inconsistent with her own findings, contemporaneous
> mental health treatment notes, and the opinion of Dr.
> Stenslie.

Tr. 49 (citation to the record omitted).  None of the ALJ's

reasons for discounting Dr. Vallery's opinions are supported by

substantial evidence.

First, the ALJ states that Dr. Vallery's opinions on

Durgin's inability to remember lengthy and detailed instructions

and her inability to tolerate common workplace stressors were

inconsistent with her own findings.  But, he does not identify

any finding by Dr. Vallery that is inconsistent with her

opinions.  Moreover, with respect to memory, Dr. Vallery's

report includes this finding:

> On the Folstein Mini-Mental Status Exam, she obtained
> a score of 26, which places her in the range of No
> Cognitive Impairment.  She lost points on the
> following exercises: Repetition, Copying, and Delayed
> Recall.

Tr. 446.[9]  It is difficult to see how Durgin's performance on the

Mini-Mental Status Exam, and in particular her loss of points on

---

[9] "The Folstein Mini-Mental Status Examination is a test commonly
used to grade a patient's cognitive state."  Martel v. U.S. Soc.
Sec. Admin., Comm'r, No. 13-cv-48-PB, 2013 WL 6068241, at *3 n.5

an exercise called "delayed recall," is inconsistent with Dr. Vallery's opinion that Durgin was unable to remember lengthy and detailed instructions.[10]   As for Dr. Vallery's opinion that Durgin was "not able to tolerate stressors common to a work environment," Tr. 447, that opinion would seem to be supported by Dr. Vallery's observation that Durgin "cried frequently during the interview," Tr. 444.   Thus, the ALJ's rejection of Dr. Vallery's opinions on grounds of their purported inconsistency with her findings is not supported by substantial evidence.

Similarly unsupported is the ALJ's determination that Dr. Vallery's opinions on Durgin's memory and her ability to tolerate stress are inconsistent with Durgin's "contemporaneous mental health treatment notes," Tr. 49.   But, the ALJ does not indicate what contemporaneous mental health treatment notes he is referring to.   Moreover, according to Dr. Stenslie, who signed his assessment on March 13, 2014, i.e., about a week

---

(D.N.H. Nov. 18, 2013) (citing Marshal F. Folstein et al., "Mini-Mental State": A Practical Method for Grading the Cognitive State of Patients for the Clinician, J. Psychiatric Res., Nov. 1975, at 189–98).   "The mean score for 'normal' individuals is 27.6."   Id. (citation omitted).

[10] While the court can claim no particular expertise in the interpretation of Mini-Mental Status Exam results, it certainly seems plausible that tests called "repetition" and "copying," on which Durgin lost points, also evaluate the test subject's memory.

after Dr. Vallery rendered her opinion, "[t]here is no mental health treatment or complaints in [the] notes."  Tr. 107.  And, indeed, the court's examination of the record has uncovered no mental health treatment notes that were contemporaneous with Dr. Vallery's opinion.  Thus, the ALJ's rejection of Dr. Vallery's opinions due to their purported inconsistency with Durgin's contemporaneous mental health treatment records is not supported by any evidence at all, much less substantial evidence.

Finally, the ALJ states that Dr. Vallery's opinions on Durgin's memory limitations and her inability to tolerate stress are inconsistent with Dr. Stenslie's opinions on those issues. With respect to Dr. Vallery's opinion on Durgin's memory limitations, the court cannot agree.  In his assessment of Durgin's RFC, Dr. Stenslie opined that Durgin had no understanding or memory limitations.  He then went on to reject Dr. Vallery's opinion that Durgin was unable to tolerate workplace stress, but stated that "her other statements [were] accepted as is."  Tr. 107.  One of Vallery's "other statements" was her opinion that Durgin was unable to understand and remember lengthy and detailed instructions.  Notwithstanding his own determination that Durgin had no limitations with respect to understanding and memory, Dr. Stenslie did not reject Dr. Vallery's differing opinion; his narrative says that he accepted

16

that opinion "as is."  The best that can be said is that there
is an internal inconsistency in Dr. Stenslie's opinion on this
issue.  Given that ambiguity, where two different readings of
Dr. Stenslie's opinion stand in absolute equipoise, the court
cannot say that substantial evidence supports the ALJ's finding
that Dr. Vallery's opinion is inconsistent with Dr. Stenslie's.
To be sure, it is up to the ALJ to resolve conflicts in the
evidence, see Irlanda Ortiz, 955 F.2d at 769, but it is
difficult to credit the ALJ with resolving a conflict that he
did not even acknowledge.

If the ALJ had credited Dr. Vallery's opinion that Durgin
was unable to remember lengthy and detailed instructions, he
would have been compelled to conclude that she was capable of
only unskilled work, which would have resulted in a
determination that she was disabled.  Because none of the ALJ's
three reasons for discounting Dr. Vallery's opinion is supported
by substantial evidence, this case should be remanded.

Given the recommended disposition of this matter, there is
no need to go any further.  However, for the benefit of the
Acting Commissioner on remand, there is one issue that, perhaps,
merits further consideration.  That issue is highlighted by the
following paragraph from the ALJ's decision:

> I afford some weight to the opinion of non-examining
> State agency physician Craig Stenslie, Ph.D.  On March

> 13, 2014, Dr. Stenslie assessed that the claimant's
> depression and anxiety were severe impairments, but
> that they only limited the claimant's ability to
> respond appropriately to changes in the work setting.
> I afford the latter portion of this opinion great
> weight, as it is consistent with the medical evidence
> of record.  However, I find that the claimant's
> physical impairments are the cause of her difficulty
> in dealing appropriately with decision-making and
> changes in a work setting.  I therefore afford this
> opinion some weight to the extent that it is
> consistent with the above residual functional capacity
> finding.

Tr. 49 (citation to the record omitted).  In other words, the

ALJ: (1) rejected Dr. Stenslie's PRT determination that Durgin's

depression and anxiety were severe impairments;[11] (2) accepted

Dr. Stenslie's RFC determination that Durgin was moderately

limited in her "ability to respond appropriately to changes in

the work setting," Tr. 107; (3) added a limitation in the area

of decisionmaking to Dr. Stenslie's RFC assessment; and (4)

ascribed Durgin's limitation to "work involving only occasional

decisionmaking and only occasional changes in work setting," Tr.

46, to her "obesity, right knee degenerative joint disease and

---

[11] While the ALJ rejected Dr. Stenslie's determination that
Durgin's depression and anxiety were severe impairments, he did
so without addressing, much less rejecting, Dr. Stenslie's PRT
findings that Durgin had moderate difficulties in maintaining
concentration, persistence, or pace, and that she had one or two
repeated episodes of decompensation, each of extended duration.
As the court has already pointed out, either of those two
findings is sufficient to support a determination that a
claimant's impairment is severe.  See 20 C.F.R. §§
404.1520a(d)(1) & 416.920a(d)(1).

osteoarthritis; [and] type II diabetes mellitus," Tr. 44, rather than to any mental impairment.

The ALJ's handling of Dr. Stenslie's opinion and his subsequent identification of mental limitations arising from physical impairments is, in the words of Winston Churchill, "a riddle wrapped in a mystery inside an enigma." Branch Metal Processing, Inc. v. Bos. Edison Co., 952 F. Supp. 893, 906 (D.R.I. 1996) (quoting Donatelli v. NHL, 893 F.2d 459, 462 (1st Cir. 1990)). At one level, this unusual move benefits Durgin, as the ALJ did ascribe mental limitations even in the absence of a severe mental impairment.[12] But even so, Durgin challenges the ALJ's decision on this point, and so the court will address it.

Here is the most significant problem with what the ALJ did. It is well established that "[a]s a lay person, [an] ALJ [is] simply not qualified to interpret raw medical data in functional terms." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999)

---

[12] While it is not so clear, the ALJ's move may also benefit respondent, to the extent that the ALJ's assignment of mental limitations arising from Durgin's physical impairments could insulate his step 2 determination from judicial scrutiny. See Therrien v. Berryhill, No. 16-cv-185-LM, 2017 WL 1423181, at *4 (D.N.H. Apr. 21, 2017) ("Errors at Step Two are harmless as long as the ALJ found at least one severe impairment, continued on with the sequential analysis, and considered the effect of all impairments on the claimant's functional capacity.") (citing Fortin v. Colvin, No. 3:16-cv-30019-KAR, 2017 WL 1217117, at *10 (D. Mass. Mar. 31, 2017)).

(citations omitted).  To the contrary, "an expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person."  Santiago v. Sec'y of HHS, 944 F.2d 1, 7 (1st Cir. 1991)).  Here, the ALJ points to no expert support for his finding that "the claimant's physical impairments are the cause of her difficulty in dealing appropriately with decision-making and changes in a work setting," Tr. 49.  The court has been able to locate no support for that proposition in Dr. Hugh Fairley's physical RFC assessment.  See Tr. 104-06.  And in a Physical Impairment Medical Source Statement, Durgin's treating physician, Dr. Kate Bonafede, did not answer a question about Durgin's ability to tolerate work stress, see Tr. 714, but rather, referred to the results of a Functional Capacity Evaluation she had commissioned from Debra McAuley, which did not address that issue.  In sum, there appears to be no support in the form of an expert opinion for the ALJ's finding that Durgin's capacities for decision-making and dealing with changes in a work setting were compromised by her obesity, degenerative joint disease, osteoarthritis, or diabetes.  The relationship between those impairments and the limitations the ALJ assigned Durgin are hardly apparent to a lay person.  Accordingly, the ALJ erred by

assigning functional limitations based upon his own lay interpretation of the medical record.

Finally, given the grounds for remand outlined above, there is no need to determine whether the ALJ's failure to mention Durgin's ADHD was a reversible error. That said, it would probably be a good idea to consider that impairment on remand.

### IV. <u>Conclusion</u>

For the reasons described above, the Acting Commissioner's motion for an order affirming her decision, document no. 11, should be denied; Durgin's motion to reverse that decision, document no. 9, should be granted to the extent that the matter is remanded to the Acting Commissioner for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g); and the clerk of the court should be directed to judgment in Durgin's favor and close the case.

Any objection to this report and recommendation must be filed within 14 days of receipt of this notice. <u>See</u> Fed. R. Civ. P. 72(b)(2). Failure to file an objection within the specified time waives the right to appeal the district court's order. <u>See</u> <u>United States v. De Jesús-Viera</u>, 655 F.3d 52, 57 (1st Cir. 2011); <u>Sch. Union No. 37 v. United Nat'l Ins. Co.</u>, 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by

objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

_____
Andrea K. Johnstone
United States Magistrate Judge

July 24, 2017

cc:  Laurie Smith Young, Esq.
     Terry L. Ollila, Esq.